IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAYMOND GRADY, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA et al., | : | No. 14-3268 |
| Defendants. | : | |

PRATTER, J.                                                                                                      MAY 26, 2015

**MEMORANDUM**

Raymond Grady's First Amended Complaint (Docket No. 13) alleges that the United States is liable under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, for false arrest/false imprisonment and assault and battery. More specifically, Mr. Grady alleges that he was wrongfully handcuffed and physically detained without probable cause by Deputy U.S. Marshal John Doe 1,[1] and that he suffered injuries as a result. The United States moves for summary judgment on Counts I and II, arguing that the Deputy Doe 1's actions were supported by probable cause, privileged, and otherwise objectively reasonable. For the reasons that follow, the Court will deny the motion.

**I.      FACTUAL BACKGROUND**[2]

On January 15, 2013, the Eastern Pennsylvania Violent Crimes Fugitive Task Force in Philadelphia received a request from North Carolina authorities for help in apprehending a fugitive who was believed to reside at an address on the 1200 block of South Dover Street in Philadelphia.

---

[1] Pursuant to the Court's Protective Order (Docket No. 9), the Deputy U.S. Marshals involved in this case will be referred to as "Deputy U.S. Marshal John Doe 1" and "Deputy U.S. Marshal John Doe 2."

[2] The facts are undisputed unless expressly noted. Where there is a factual dispute, as long as Mr. Grady has record support for his position, the facts are viewed in the light most favorable to him.
    On May 22, 2015, after oral argument on the motion for summary judgment, the United States attempted to supplement the record before the Court by submitting an undocketed letter with exhibits. Such an informal and untimely attempt to expand the summary judgment record before the Court is improper, and the Court declines to consider the letter and exhibits at this time.

The request was accompanied by a "collateral lead," which was given to Deputy U.S. Marshal John Doe 2. The collateral lead included the fugitive's name, date of birth, social security number, and address, as well as information regarding the fugitive's wife, Facebook page, and alleged offense (in this case, indecent liberties with a child). Also included in the collateral lead were photographs of the fugitive and links to a YouTube video in which the fugitive can be seen and heard preaching for more than ten minutes. In the course of his preliminary investigation, Deputy Doe 2 also obtained other pieces of information about the fugitive, including the fugitive's driver's license photograph.[3] Later that day, Deputy Doe 2 invited Deputy Doe 1 to help him arrest the fugitive. They agreed to meet the next morning near 1200 South Dover Street.

Between 7:30 a.m. and 8:30 a.m. on the morning of January 16, 2013, Deputy Doe 1 arrived in plain clothes near 1200 South Dover Street to search for and arrest the fugitive, but Deputy Doe 2 was running late. Deputy Doe 1 had received a general description of the fugitive as "a black male, approximately six-feet tall, one-hundred and eighty pounds, thirty years old and typically nicely dressed." (Pl.'s Ex. 4 at 2).[4] Deputy Doe 1 also received a copy of the fugitive's driver's license photograph from 2010, in which the fugitive had a black mustache and goatee.

After arriving on location, Deputy Doe 1 observed Mr. Grady walking north on 28th Street from Wharton Street to a bus stop on Grays Ferry Avenue, a few blocks away from South Dover

---

[3] The driver's license photograph was not presented to the Court as part of the record on summary judgment. The only images of the fugitive in the record are photographs that Deputy Doe 1 did not see before the incident with Mr. Grady. The only images of Mr. Grady in the record are photographs of his head from various angles, with no photographs capturing his face from the front or his profile.

[4] In his Declaration for purposes of summary judgment, Deputy Doe 1 stated that the fugitive was described to him as "a Black male, in his late 20s, slightly over six feet tall, weighing approximately 160 to 170 pounds." (Def.'s Ex. 2 ¶ 12).

Street.[5] Mr. Grady is slightly over six-feet tall and, on January 16, 2013, was 28 years old, weighed 160 pounds, and wore facial hair in the form of a close-cut mustache and goatee. Deputy Doe 1 claims that Mr. Grady's clothing appeared to be high-quality and expensive. Mr. Grady testified that his whole outfit cost $180, and he argues that he did not look like the fugitive because his facial hair, facial bone structure, and eyebrows appeared different than the fugitive's.

Deputy Doe 1 encountered Mr. Grady within a few seconds of his arrival at the bus stop. Deputy Doe 1 identified himself as a U.S. Marshal, showed Mr. Grady his badge and (holstered) service weapon, and asked Mr. Grady to show him identification. Mr. Grady did not comply with Deputy Doe 1's request. Mr. Grady testified that he was not sure that Deputy Doe 1 was indeed a U.S. Marshal, so he announced his intention to call 911 to verify Deputy Doe 1's status as a law enforcement officer. Mr. Grady backed away from Deputy Doe 1, and put his cell phone to his ear. Deputy Doe 1 tried to knock Mr. Grady's phone out of his hand, and Mr. Grady backed into the street. Deputy Doe 1 grabbed Mr. Grady's arm and pulled him back onto the sidewalk. Deputy Doe 1 twisted Mr. Grady's arm behind his back and Mr. Grady slipped and fell in the mud. Deputy Doe 1 pinned Mr. Grady on the ground and pushed him into a nearby chain link fence. Deputy Doe 1 handcuffed Mr. Grady and Mr. Grady remained kneeling until police arrived. Deputy Doe 1 had no backup on the scene and was not in a position to receive assistance from any other officer as he attempted to restrain and handcuff Mr. Grady.

As a result of the encounter, Mr. Grady suffered apparently minor physical injuries. He first went to the hospital the day after the incident, where he was diagnosed with bruising, cuts, and pain, for which he was prescribed ibuprofen. He took no pain medication after February 1, 2013, received no further treatment for his injuries, and reported having no pain six weeks after the incident.

---

[5] Although Deputy Doe 1's incident report states that he observed Mr. Grady leaving the 1200 block of South Dover Street, (*see* Pl.'s Ex. 4), Deputy Doe 1 testified at his deposition that he never observed Mr. Grady on that block.

## II.　LEGAL STANDARD

A court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* (citing *Anderson*, 477 U.S. at 248). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

The movant bears the initial responsibility for informing the court of the basis for the motion for summary judgment and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the moving party has met the initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**III.  DISCUSSION**

The FTCA provides that the United States "shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances . . . ," 28 U.S.C. § 2674, and that the district courts "have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred," *id.* § 1346(b)(1). The parties agree that the actions of Deputy Doe 1 and Deputy Doe 2 took place in Pennsylvania, so the Court will apply Pennsylvania law.

The First Amended Complaint makes two claims against the United States: one for false arrest/false imprisonment[6] and another for assault and battery. The United States moves for summary judgment on both claims.

A.  FALSE ARREST/FALSE IMPRISONMENT

To succeed on a claim of false arrest under Pennsylvania law, a plaintiff must demonstrate "(1) the detention of another person, and (2) the unlawfulness of such detention." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994). Arrests are lawful if they are based on probable cause. *See Manley v. Fitzgerald*, 997 A.2d 1235, 1241 (Pa. Commw. Ct. 2010). In a case of mistaken identity, the Court determines whether probable cause existed to arrest the innocent party by

---

[6] Under Pennsylvania law, false arrest and false imprisonment are essentially the same actions. *See Olender v. Twp. of Bensalem*, 32 F. Supp. 2d 775, 791 (E.D. Pa. 1999) (citing Pennsylvania cases). For the sake of brevity, the Court will refer to Mr. Grady's first claim simply as a claim for false arrest.

5

determining whether "the facts and circumstances within the arresting officer's knowledge [were] sufficient in themselves to warrant a reasonable person to believe that an offense ha[d] been or [wa]s being committed by the person to be arrested." *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995). "[W]hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest." *Hill v. California*, 401 U.S. 797, 801 (1971). However, if the officer lacks probable cause to arrest the first party or *unreasonably* mistakes the second party for the first party, then the arrest may constitute false arrest. Thus, in assessing whether probable cause existed in the case of a mistaken-identity arrest, the Court must specifically consider (1) whether there was probable cause to arrest the true target, and (2) whether the mistake of identity was reasonable. *See Grant v. Borough of Darby*, No. 98-1206, 1999 WL 236609, at *3 (E.D. Pa. Apr. 15, 1999).

Generally, under Pennsylvania law, a plaintiff claiming false arrest bears the burden of proving the absence of probable cause. *See Renk*, 641 A.2d at 293. However, "[o]nce the plaintiff in a false arrest case establishes that he or she was arrested and imprisoned without warrant, the burden is said to shift to the defendant to justify the arrest." 2 Summ. Pa. Jur. § 15:21 (2d ed.); *see Patzig v. O'Neil*, 577 F.2d 841, 849 n.9 (3d Cir. 1978) ("At common law, the rule was that once a plaintiff showed arrest and imprisonment without process, the burden shifted to the defendant to show justification, such as probable cause."); *Dubner v. City and County of San Francisco*, 266 F.3d 959, 965 (9th Cir. 2001) (citing cases from several courts of appeal that have adopted a burden-shifting approach to questions of probable cause in civil cases). As both parties recognize that Mr. Grady was not the fugitive and Deputy Doe 1 was not acting on a warrant for Mr. Grady's arrest, the burden is on the United States to present evidence of probable cause. The Court can only grant summary judgment on the grounds that probable cause existed to arrest Mr. Grady if the undisputed evidence in the record supports such a finding.

6

The United States advances three factual arguments as to why Deputy Doe 1 had probable cause to arrest Mr. Grady: (1) Mr. Grady's appearance matched the verbal description of the fugitive, (2) Mr. Grady was observed a few blocks from the fugitive's address, and (3) Mr. Grady backed away from Deputy Doe 1 after being asked for identification, which suggests that he was preparing to abscond. The Court finds that factual disputes preclude finding at this stage of the litigation that Deputy Doe 1 had probable cause as a matter of law to arrest Mr. Grady. In particular, gaps in the record and credibility issues preclude a finding that Deputy Doe 1 made an objectively reasonable mistake when he arrested Mr. Grady thinking he might be the fugitive.

There is insufficient evidence in the record from which the Court can find that no reasonable finder of fact may conclude that probable cause existed. The United States argues that Mr. Grady's appearance matched the description of the fugitive. However, even assuming that he matched the verbal description closely enough to support the existence of probable cause, Deputy Doe 1 also had a driver's license photograph of the fugitive, and Mr. Grady contends that he looks nothing like the fugitive in the photograph. Although both parties refer to the driver's license photograph of the fugitive that Deputy Doe 1 viewed before approaching Mr. Grady, that photograph is not in the record before the Court. Nor is there a straightforward photograph of Mr. Grady in the record.

The degree of resemblance between two individuals may be a fact subject to genuine dispute. *See Blaylock v. City of Phila.*, 504 F.3d 405, 412 (3d Cir. 2007). Nevertheless, if the driver's license photograph were in the record before the Court, the Court might be able to find that Mr. Grady and the fugitive have sufficiently similar appearances such that Deputy Doe 1 reasonably mistook Mr. Grady for the fugitive. That is because the Court may, under some circumstances, conclude that evidence in the record demonstrates that one party's position on a question typically left for a factfinder "is blatantly and demonstrably false." *Id.* at 414 (discussing *Scott v. Harris*, 550 U.S. 372 (2007)). However, the driver's license photograph is not in the record before the Court, so

7

the Court cannot conclude that Mr. Grady and the fugitive were so similar in appearance—even considering the attendant circumstances—that Deputy Doe 1 was objectively reasonable in mistaking Mr. Grady for the fugitive.

As the Court previously noted, it is the movant's burden under Pennsylvania law to present sufficient evidence from which the Court may conclude on summary judgment that probable cause existed. *See Patzig*, 577 F.2d at 849 n.9. Here, the record does not bear out that Mr. Grady's resemblance to the driver's license photograph of the fugitive was similar enough that it was objectively reasonable for Deputy Doe 1 to mistake Mr. Grady for the fugitive. Indeed, it is possible that Mr. Grady's appearance was so *dissimilar* to the fugitive's appearance in the driver's license photograph that Deputy Doe 1 made an objectively *unreasonable* mistake.[7] Because it is impossible to determine the reasonableness of Deputy Doe 1's mistake under the totality of the circumstances without reference to the photograph itself, the Defendant has failed to carry its burden. Consequently, the degree of resemblance is a disputed issue of material fact that must be resolved at trial.

In combination with the missing driver's license photograph, issues relating to Deputy Doe 1's credibility counsel against granting summary judgment. The record shows not only that Deputy Doe 1 provided inconsistent accounts of the verbal description of the fugitive,[8] but also that he

---

[7] As noted above, the photographs of Mr. Grady and the fugitive that are in the record before the Court are not clear and were not seen by Deputy Doe 1 before the incident, so they cannot provide grounds for summary judgment. *See supra* note 3. Even if they could, it is by no means clear from those photographs that Mr. Grady resembles the fugitive closely enough for Deputy Doe 1's mistake to be objectively reasonable.

[8] Deputy Doe 1 wrote in his Use of Force Report that the fugitive was described as "a black male, approximately six-feet tall, one-hundred and eighty pounds, thirty years old and typically nicely dressed." (Pl.'s Ex. 4 at 2). However, in his Declaration for purposes of summary judgment, Deputy Doe 1 stated that the fugitive was described as "a Black male, in his late 20s, slightly over six feet tall, weighing approximately 160 to 170 pounds." (Def.'s Ex. 2 ¶ 12). Although these descriptions are similar, the inconsistencies between those descriptions reinforce the Court's view that Deputy Doe 1's credibility is an issue cutting against summary judgment.

provided inconsistent accounts of the location where he observed Mr. Grady. In his Use of Force Report, Deputy Doe 1 reported that he observed Mr. Grady "leaving the block" on which the fugitive's address was located, but he later testified that he never saw Mr. Grady on that block. The United States argues that Deputy Doe 1's references to the "block" are immaterial to the issue of probable cause, but the Court finds that they may be material for two reasons. First, in light of the fact that Mr. Grady might look nothing like the photograph of the fugitive, *see supra*, Deputy Doe 1's observation of Mr. Grady in the general vicinity of 1200 South Dover Street might not be enough for Deputy Doe 1 to reasonably conclude that he was the fugitive. It could be that Deputy Doe 1's mistake might have been reasonable if he had seen Mr. Grady leaving the 1200 block of South Dover Street, but it is not because he saw Mr. Grady a few blocks away from that location.

Second, Deputy Doe 1's inability to maintain a consistent story places his credibility into issue, thereby raising at least one question that must be resolved at trial. For example, in light of the credibility issues regarding Deputy Doe 1's account of the incident, the details of Mr. Grady's encounter with Deputy Doe 1 are a matter of dispute and do not demonstrate the existence of probable cause to arrest Mr. Grady. Deputy Doe 1's characterization of the incident with Mr. Grady—especially with respect to the reasonableness of his belief that Mr. Grady was resisting arrest or attempting to flee—will support a finding of probable cause only in the event that Deputy Doe 1 is found to be more credible than Mr. Grady, and inconsistencies in Deputy Doe 1's statements may be critical to the Court's decision on that point.[9] Although Mr. Grady's subjective intentions are not relevant to the probable cause inquiry, *see, e.g.*, *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 789 (3d Cir. 2000), the record does not necessarily support a finding that it was

---

[9] Moreover, because the United States bears the burden of demonstrating probable cause, its reliance on *Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120, 130 (3d Cir. 1998), in which summary judgment was appropriate notwithstanding minor credibility issues because the *nonmoving* party failed to present evidence to meet its burden of proof, is inapposite.

reasonable for Deputy Doe 1 to conclude that Mr. Grady's movements constituted an attempt to flee or resist. This is especially true in light of Mr. Grady's testimony suggesting that he announced his intention to call 911, (*see* Pl.'s Ex. 5 at 53:14-19), and the possibility that Deputy Doe 1 might have unreasonably mistaken Mr. Grady for the fugitive in the first place, thereby making Mr. Grady's perceived resistance insufficient grounds for finding probable cause.

The United States urges the Court to consider the totality of the circumstances and not to engage in a "divide-and-conquer" analysis. *See United States v. Yusuf*, 461 F.3d 374, 390 (3d Cir. 2006) (quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002)). But the Court would engage in just such an analysis if it were to grant summary judgment for the United States by finding that probable cause existed based on some evidence, including the verbal description of the fugitive's appearance and Mr. Grady's proximity to the reported location of the fugitive, *but ignoring the photograph of the fugitive that Deputy Doe 1 relied upon when he mistook Mr. Grady for the fugitive*. The United States bears the burden of proving that probable cause existed to arrest Mr. Grady under the totality of the circumstances, and the Court finds that the United States has not carried that burden because credibility issues, factual disputes, and a critical gap in the record prevent the Court from finding, at this stage of the litigation, that Deputy Doe 1 had probable cause to arrest Mr. Grady. Consequently, the Court must deny summary judgment.[10]

---

[10] Although Mr. Grady's claims will survive summary judgment, it is worth noting that several of his arguments are not relevant to the merits of his claim for false arrest. For example, Mr. Grady argues that Deputy Doe 2 should have sent more information about the fugitive to Deputy Doe 1. This argument is beside the point for two reasons. First, it is essentially an argument that the Deputies conducted their investigation negligently, and claims for negligent investigation are barred by the discretionary function exception to the FTCA. *See* 28 U.S.C. § 2680(a). Second, even if it would have been prudent for Deputy Doe 2 to provide Deputy Doe 1 with more information, the analysis as to whether Deputy Doe 1 had an objectively reasonable basis to believe that probable cause existed to arrest Mr. Grady remains the same. Deputy Doe 1 knew what he knew, and the proper inquiry is whether his actions were reasonable in light of the totality of the circumstances and based on what he actually knew at the time. *See United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002) ("Probable cause exists whenever reasonably trustworthy information or circumstances

B.  ASSAULT & BATTERY

Under Pennsylvania law, "[a]ssault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Renk*, 641 A.2d at 293. "In making a *lawful* arrest, a police officer may use such force as is necessary under the circumstances to effectuate the arrest. The reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery." *Id.* (citing 18 Pa. Cons. Stat. § 508) (emphasis added). Because issues of fact remain as to whether Mr. Grady's arrest was lawful (i.e., supported by probable cause), the Court must deny summary judgment on the claim for assault and battery. *See Pahle v. Colebrookdale Twp.*, 227 F. Supp. 2d 361, 374 (E.D. Pa. 2002).

IV.  CONCLUSION

Because the Court cannot find, based on the undisputed facts in the record, that Deputy Doe 1 had probable cause to arrest Mr. Grady, genuine issues of material fact exist and the Court cannot grant summary judgment on either the claim for false arrest or the claim for assault and battery.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

*within a police officer's knowledge* are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." (emphasis added)).

Mr. Grady also argues that Deputy Doe 2 "caused" Mr. Grady's arrest without probable cause. But the undisputed evidence in the record demonstrates that Deputy Doe 2 provided accurate (albeit incomplete) information and, more importantly, instructed Deputy Doe 1 to use his discretion in deciding whether to approach Mr. Grady. Consequently, even if Mr. Grady's claim were not barred by the discretionary function exception, it cannot be the case that Deputy Doe 2 *caused* Mr. Grady's arrest in a way that gives rise to liability. *See Gilbert v. Feld*, 788 F. Supp. 854 (E.D. Pa. 1992) (finding that private individuals intentionally purposefully instigated a wrongful arrest by providing false information may be liable for false arrest).